## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NANCY DELPIZZO,

        **Plaintiff,**

                                **Case No. 3:19-cv-21105**

    **v.**                              **Magistrate Judge Norah McCann King**

ANDREW SAUL,
**Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Nancy Delpizzo for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.      PROCEDURAL HISTORY

On August 18, 2015, Plaintiff filed her application for benefits, alleging that she has been disabled since May 10, 2013, due to a number of physical and mental impairments. R. 311−12. The application was denied initially and upon reconsideration. R. 235−40, 242−47. Plaintiff requested a *de novo* hearing before an administrative law judge. R. 248−49. Administrative Law Judge Theodore W. Grippo ("ALJ") held a hearing on September 26, 2018, in which Plaintiff,

who was represented by counsel, participated and testified, as did a vocational expert. R. 162–99. In a decision dated October 21, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 10, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 16–27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 18, 2019. R. 4–9. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 25, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[1] On August 26, 2020, the case was reassigned to the undersigned. ECF No. 15. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

---

[1]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. R. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 10, 2013, her alleged disability onset date, and the date of the ALJ's decision. R. 20.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, degenerative disc disease, and chronic obstructive pulmonary disease. R. 20. The ALJ also found that the following diagnosed impairments were not severe: migraines, right shoulder dysfunction, essential hypertension, anxiety disorder, and substance addiction disorder. R. 20–21.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21–22.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 22–26. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an auto finance manager. R. 26–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 10, 2013, her alleged disability onset date, through the date of the decision. R. 27.

Plaintiff disagrees with the ALJ's findings at steps four and five and contends that the ALJ improperly excluded evidence. She asks that the decision of the Commissioner be

reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law*, ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 12.

## IV.  DISCUSSION

### A.  Evaluation of Medical Opinions

Plaintiff first argues the "ALJ failed to properly weigh . . . the opinions of the Plaintiff's treating doctors, Drs. Scheker, Mozzocchi, Podell, Toder, Dhar and Lanez," and that the ALJ erred in assigning "considerable" and "significant" weight to the opinions of two reviewing state agency physicians. *Plaintiff's Brief*, ECF No. 9, pp. 11–13; *Plaintiff's Reply Brief*, ECF No. 13, p. 6. For the reasons that follow, Plaintiff's argument is not well taken.

#### 1.  Treating sources

Plaintiff contends that the ALJ's rejection of the opinions of her treating physicians on the basis that those opinions were not supported by the medical evidence was itself not supported by substantial evidence. *Plaintiff's Brief*, ECF No. 9, pp. 11, 13; *see also Plaintiff's Reply Brief*, ECF No. 13, p. 6. However, Plaintiff's conclusory assertion in this regard is unaccompanied by any substantive argument or citation to the record. *See generally id*. Notably, Plaintiff did not identify any specific functional limitation found by any of these sources that the ALJ failed to consider, nor does she explain why the ALJ's consideration of any treating source opinion was erroneous. *See generally Plaintiff's Brief*, ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 13. The Court will not construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec*., No. 19-

2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) "Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).

## 2. State agency physicians

The ALJ assigned "considerable weight" and "significant weight" to the opinions of the reviewing state agency physicians, to which Plaintiff objects. State agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

Here, the ALJ assigned "considerable weight" and "significant weight" to the opinions of the reviewing state agency physicians, reasoning as follows:

As for the opinion evidence, in January 2016, Raymond Briski, M.D., the State agency medical consultant, concluded that the claimant could perform light work with unlimited balancing and frequent other postural activities, and should avoid concentrated exposure to extreme temperatures, wetness, and humidity, as well as even moderate exposure to pulmonary irritants (Ex. 1A/9-10). On reconsideration in July 2016, Alka Bishnoi, M.D., affirmed Dr. Briski's, assessment (Ex. 3A/15-16). The undersigned has given the opinions of the State agency medical consultants considerable weight. Drs. Briski and Bishnoi reviewed all of the available evidence, and their opinions were based on that review, as well as their knowledge of the disability program and its requirements. Additionally, these opinions are consistent with the clinical examination findings and the claimant's longitudinal treatment history. . . .

In December 2015, Sharon Flaherty, Ph.D., the State agency psychological consultant, concluded that the claimant's mental impairments were not severe (Ex. IA/7-8). Luis Umpierre, Psy.D., affirmed Dr. Flaherty's opinion on reconsideration in July 2016 (Ex. 3A/12-13). The undersigned has given the opinions of the State agency psychological consultants significant weight. Drs. Flaherty and Umpierre reviewed all of the available evidence, and their opinions were based on that review, as well as their knowledge of the disability program and its requirements. Furthermore, these opinions are consistent the claimant's mental health treatment history and the findings on mental status examination.

R. 25–26. The Court finds no error with the ALJ's consideration in this regard.

Plaintiff, however, insists that the ALJ erred in assigning significant or considerable weight to the reviewing state agency experts because their "opinions were based on an incomplete record at the initial and reconsideration stages of the administrative process. Fully 20% of the medical documentation (not counting the evidence the ALJ refused to admit and consider) was not in the record at the time those opinions were given. (R. 25-26)[.]" *Plaintiff's Brief*, ECF No. 9, p. 12. However, as previously noted, an ALJ may rely on a state agency consultant's findings and opinions even when additional medical evidence is later submitted. *Chandler*, 667 F.3d at 361; *Wilson*, 331 F. App'x at 919. Notably, Plaintiff fails to explain how any specific evidence submitted after the state agency consultants had reviewed the record supports her argument in this regard. *See Plaintiff's Brief*, ECF No. 9, p. 12; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Plaintiff also complains that the ALJ gave considerable and significant weight to the reviewing state agency experts even though they had no treating relationship with the Plaintiff and "[t]he record is silent as to the specialties of the consultants." *Plaintiff's Brief*, ECF No. 9, p. 13. Plaintiff's arguments are not well taken. "Simply because these opinions were rendered by state agency physicians who did not have a treating relationship with Plaintiff does not, as discussed in the aforementioned precedent, mean that the ALJ could not give them significant weight[.]" *Jones v. Colvin*, No. 3:14-CV-2337, 2016 WL 1071021, at *12 (M.D. Pa. Mar. 17, 2016); *cf. Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration"). In addition, "specialty is just one factor to consider. . . . Contrary to [Plaintiff's] assertions, … a state agency medical consultant—was *per se* qualified to issue a medical opinion for the ALJ's consideration." *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 60 (3d Cir. 2017) (citations omitted).

### B.      RFC

Plaintiff argues that the ALJ failed to properly assess her RFC because the ALJ failed to take into account all of her severe, medically determinable, impairments. *Plaintiff's Brief*, ECF No. 9, pp. 13–18. This Court disagrees.

A claimant's RFC is the most that a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with

determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record," but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity, and even moderate exposure to irritants such as smoke, fumes, dust, gases, and poor ventilation. She can rotate her head left and right 15 degrees (20% of normal) and move her head up and down15 degrees (33% of normal).

R. 22. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, findings by Samuel Schenker, M.D., a neurologist who examined Plaintiff in October 2013, that revealed rigidity with flexion and extension of the cervical area and tenderness to palpation of the lumbar area, but intact strength and sensation and normal gait; a November 9, 2013, cervical spine MRI that showed cervical spondylosis with neural foraminal narrowing, but no significant spinal canal stenosis; December 2015 findings by Franky Merlin, M.D., a consultative

examiner, including an antalgic gait and inability to walk heel/toe, an ability to forward flex the spine to 90 degrees and squat, normal strength and sensation, and straight-leg raising to 90 degrees bilaterally; x-rays of the thoracic and lumbar spine, taken in conjunction with the consultative examination, which showed mild degenerative changes; the fact that Plaintiff did not complain specifically of fibromyalgia at the consultative examination and, as to her COPD, she admitted that she never had an episode of emphysema; Plaintiff's attendant at physical therapy sessions for a few months without any significant changes; September 2016 x-rays of the cervical and lumbar spine which revealed cervical osteopenia with multilevel hypertrophic spondylosis and lumbar dextroscoliosis with diffuse spondylosis, as well as severe foraminal stenosis at L5-S1; May 2018 x-rays of the cervical and thoracic spine which demonstrated mild multilevel loss of disc space height and anterior bridging syndesmophytes suggestive of ankylosing spondylitis; the fact that Plaintiff cooks, shops for short periods, and cleans, including using sprays daily and scrubbing the shower once per week; and state agency opinions that Plaintiff could perform light exertional work subject to certain additional environmental limitations. R. 23–26. The ALJ also specifically explained this RFC determination as follows:

> The undersigned considered the evidence of progressive degenerative changes, particularly in the claimant's cervical and thoracic spine, as well as the clinical findings of lumbar tenderness and decreased cervical range of motion, in assessing a residual functional capacity for light work with frequent postural activities. Nonetheless, the claimant's consistently normal strength and sensation, as well as her activity level, do not support the additional limitations she alleged.

R. 24.

> The claimant's fibromyalgia also would not prevent her from sustaining light work with frequent postural activities. In his November 2014 letter, Dr. Podell reported that the claimant had painful fibromyalgia tender points, as well as difficulty with concentration and balance (Ex. 5F). The claimant did not complain specifically of fibromyalgia at the consultative examination, but she had difficulty getting on the examining table and she could not walk on her heels or toes (Ex. 7F/2). However, as noted above, Dr. Merlin appreciated intact strength and sensation, including grip

13

strength, contrary to the claimant's allegations of inability to use her hands at times (*Id*. at 2). In March 2016, the claimant established care with rheumatologist Rajat Dhar, M.D., and Dr. Dhar observed degenerative changes of both hands, as well as widespread soft tissue discomfort (Ex. 8F/3-4). The record does not document additional treatment with Dr. Dhar and, although primary care records do show positive fibromyalgia tender points and some complaints of pain, there is very little other evidence in the record related to this impairment (Ex. 14F; 17F). Considering the evidence of widespread positive fibromyalgia tender points, as well as the claimant's subjective complaints, the undersigned finds that pain from fibromyalgia would contribute to a residual functional capacity for light work with frequent postural activities. Nonetheless, the claimant's normal strength and limited treatment weigh against a finding of further limitations.

The claimant's COPD also does not cause limitations beyond those in the residual functional capacity above. During the December 2015 consultative examination, the claimant told Dr. Merlin that she had never had an episode of emphysema, and she said that she took Advair, Spiriva, and Singulair (Ex. 7F/l). Dr. Merlin did not note any abnormalities on lung examination, and pulmonary function testing showed forced vital capacity (FVC) of 88% predicted and forced expiratory volume (FEVI) of 82% predicted (*Id*. at 2). During a March 2016 primary care visit, the claimant complained of an allergic reaction to her medication, with intermittent wheezing; however, lung examination was again normal (Ex. 9F/2, 4). The record does not clearly document any additional treatment or evaluation for COPD, and the claimant has not sought emergency room or inpatient treatment for acute exacerbations of breathing problems. Accordingly, although the undersigned finds that the claimant's COPD would cause a limitation to light work and require her to avoid concentrated exposure to extreme temperatures, wetness and humidity, as well as even moderate exposure to pulmonary irritants, additional limitations are not appropriate.

R. 24–25.

In sum, the above residual functional capacity assessment is supported by the medical evidence of record, as well as the opinions of the State agency medical and psychological consultants. Specifically, pain and limited mobility in the claimant's back and neck related to degenerative disc disease could reasonably limit her to light work with frequent postural activities, but restricted movement of the neck side to side and up and down. Pain from fibromyalgia would also contribute to these limitations. Shortness of breath and other symptoms from COPD are consistent with a residual functional capacity for light work with no concentrated exposure to extreme temperatures, wetness, and humidity, as well as not even moderate exposure to pulmonary irritants. The claimant's migraines, hypertension, right shoulder dysfunction, anxiety disorder, and substance abuse disorder have also been considered, but these conditions do not cause additional or significant functional limitations.

R. 26. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination, arguing that her migraine headaches, right shoulder dysfunction, anxiety disorder and essential hypertension—which the ALJ addressed at step two of the sequential evaluation—require additional or more significant limitations than those included in the ALJ's RFC determination. *Plaintiff's Brief*, ECF No. 9, pp. 13–18. Plaintiff's argument is not well taken. As a preliminary matter, the ALJ specifically found these impairments to be non-severe at step two because "the record does not establish that these conditions result in significant work-related functional limitations." R. 20. In addition, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*. In any event, as previously discussed, the ALJ specifically stated that he considered these non-severe impairments at step four but found that "these conditions do not cause additional or significant functional limitations." R. 26; *cf. Wilson v. Comm'r of Soc. Sec.*, No. CV 15-3096, 2018 WL 524548, at *7 (D.N.J. Jan. 23, 2018)

("Wilson gives the Court no reason to doubt that, in determining his physical RFC, the ALJ failed to consider all the evidence in the record (including the medical and non-medical evidence)—and explained his rejection of certain pertinent evidence."). As noted earlier, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554. Notably, Plaintiff cites to no record evidence that supports her apparent assertion that these impairments require different or more restricted limitations, nor does she identify what those limitations should be, or otherwise explain how remanding this action would lead to a different RFC. *See Plaintiff's Brief*, ECF No. 9, pp. 13–18. The Court will not hunt through the record to find evidence or construct Plaintiff's arguments for her. *See Shinseki*, 556 U.S. at 409–10; *Atkins*, 2020 WL 1970531, at *4; *Claxton*, 766 F.3d at 307.

Finally, Plaintiff complains that the ALJ relied on his own medical opinion where (1) despite the observation by treating physician Dr. Podell "that Ms. Delpizzo had difficulty completing serial sevens and her ability was extremely limited, the ALJ noted that he did not observe any such difficulty at the hearing"; and (2) "the ALJ made up percentages of loss of range of motion that are unsupported in th[e] record and are merely speculative." *Plaintiff's Brief*, ECF No. 9, p. 16 (citing R. 20 and 23–24, respectively). Plaintiff's arguments are not well taken. In finding at step two that Plaintiff had only a mild limitation in her ability to understand, remember, or apply information, the ALJ noted Dr. Podell's observation that Plaintiff had difficulty completing serial sevens and that her ability to sustain concentration was extremely limited; however, the ALJ observed that "at the hearing the claimant did not have any difficulty recalling details of her personal, work, and medical history at the hearing, nor did she appear confused or have difficulty answering questions." R. 20. An ALJ may properly rely on his or her observations of a claimant during a hearing. *Cf. Guyer v. Saul*, No. 3:18-CV-01931, 2020 WL

497286, at *10 (M.D. Pa. Jan. 15, 2020), *report and recommendation adopted*, No. 3:18CV1931, 2020 WL 504658 (M.D. Pa. Jan. 30, 2020) (finding the RFC assessment was supported by substantial evidence where the ALJ considered, *inter alia*, his own observation at the hearing undermined the claimant's assertions of the need to change positions every couple of minutes while sitting). In any event, even if the ALJ erred at step two in relying on his own observations at the hearing when finding that Plaintiff had only mild limitation in this area of functioning, Plaintiff has not explained how this error would result in different functional limitations at step four or would otherwise require remand based on the present record. Particularly is this so where the ALJ found that Plaintiff had mild limitations in the three remaining areas of mental functioning and where the state agency physicians found that Plaintiff's mental impairments were not severe. *See Plaintiff's Brief*, ECF No. 9, p. 16; *see also* R. 20–21, 25–26; *Shinseki*, 556 U.S. at 409–10; *Hess*, 931 F.3d at 209.

To the extent that Plaintiff argues that the ALJ "made up percentages of loss of range of motion" in the RFC, this argument is likewise not well taken. As previously noted, the ALJ's RFC specified that Plaintiff "can rotate her head left and right 15 degrees (20% normal) and move her head up and down 15 degrees (33% normal)." R. 22. The consultative examiner, Dr. Merlin, to whose findings and opinions the ALJ gave "great weight," R. 25, found that Plaintiff's range of motion of the neck included "left rotation 0-15 degrees, right rotation 0-15 degrees, flexion 0-15 degrees, and extension 0-15 degrees." R. 804. In any event, as previously noted, it is the ALJ–not treating or examining physicians or state agency physicians—who makes the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. Accordingly, Plaintiff's assertion that the ALJ improperly relied on his own medical opinion when crafting the RFC does not warrant reversal or remand.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## C.     Past Relevant Work at Step Four

Plaintiff contends that the ALJ erred at step four of the sequential evaluation when finding that Plaintiff was capable of performing her past relevant work as an auto finance manager. *Plaintiff's Brief*, ECF No. 9, pp. 18–20; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–4. Plaintiff specifically argues that her work as a finance manager cannot be considered "past relevant work" at step four because the ALJ misstated the vocational expert's testimony and because Plaintiff did not perform that skilled work long enough for her to learn it, consistent with SSR 82-61. *Id*. This Court disagrees.

At step four, "[t]he claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). The ALJ considers whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In making this assessment,

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Garibay v. Comm'r of Soc. Sec*., 336 F. App'x 152, 158 (3d Cir. 2009) (quoting *Burnett,* 220 F.3d at 120). An ALJ should determine whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually

performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61. In connection with this latter consideration, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job, but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

SSR 82-62 identifies the evidence that an ALJ should consider in making this determination, and places particular emphasis on the claimant's own statements about past work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62; *see also Garibay*, 336 F. App'x at 158 (stating that, when considering whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers, "the ALJ may rely on job descriptions found in the Dictionary of Occupational Titles ("DOT")").

"The DOT lists a specific vocational preparation (SVP) time for each described occupation." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 3562691, at *7 n.8 (D.N.J. Aug. 6, 2019). "SVP" refers to the amount of time required by a typical worker to learn how to perform a specific job." *Jones v. Astrue*, 570 F. Supp. 2d 708, 716 n.5 (E.D. Pa. 2007), *aff'd sub nom. Jones v. Comm'r of Soc. Sec.*, 275 F. App'x 166 (3d Cir. 2008). "Using the skill level definitions

in 20 C.F.R. § 404.1568, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *Thomas*, 2019 WL 3562691, at *7 n.8. A job with an SVP of 6 requires over one year and up to two years to learn. DOT, App. C.

Here, the ALJ determined that Plaintiff was capable of performing her past relevant work as an auto finance manager because that work did not require the performance of work-related activities precluded by Plaintiff's RFC:

> In order for a job to qualify as past relevant work, the claimant must have performed it within the 15 years prior to the date of decision, long enough to learn it, and at substantial gainful activity levels. The claimant worked as an auto finance manager from 2002 until 2013, and she earned as much as $87,000 per year during this period (Ex. 5D/2). The vocational expert testified that this job was skilled, with an SVP of six, requiring one to two years to learn. Based on the foregoing, the claimant's job as an auto finance manager qialifies [sic] as past relevant work.

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed. The vocational expert testified that the auto finance manager job was sedentary, both as actually and generally performed, and was not otherwise inconsistent with the claimant's residual functional capacity. Therefore, the undersigned finds that the claimant can perform her past relevant work as an auto finance manager as actually and generally performed.

R. 26–27. The ALJ went on to find that Plaintiff was not under a disability from May 10, 2013, her alleged disability onset date, through the date of the decision. R. 27.

Plaintiff challenges this finding, noting that the job of finance manager, identified by the vocational expert as DOT 241.367-018, has a SVP of 6, which requires one to two years to learn. *Plaintiff's Brief*, ECF No. 9, p. 18–19. Plaintiff specifically argues that she performed this job for only six months and the years spent working in a single job as both a finance manager and assistant general manager, *i.e.* time spent working a "composite" or "combo" job, may not be used towards the time spent in the single job of finance manager. In this regard, Plaintiff refers to

the testimony of the vocational expert, who testified that a person with Plaintiff's vocational profile and RFC could perform only the finance manager job and not the other jobs previously performed by Plaintiff, *i.e.*, assistant general manager and automobile sales. *Id.* at 18−20 (citing, *inter alia*, R. 169−71); *Plaintiff's Reply Brief*, ECF No. 13, pp. 1−4 (citing, *inter alia*, R. 169, 172, 190). Plaintiff's arguments are not well taken.

"[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." SSR 82-61. "'To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform each job within a composite job, whether as actually performed or as generally performed in the national economy.'" *Bear v. Saul*, No. 3:19-CV-01414, 2020 WL 4924540, at *6 (M.D. Pa. Aug. 21, 2020) (quoting *Boggs v. Colvin*, 2014 WL 1277882, at *10 (M.D. Pa. 2014)). "An ALJ may not 'divide a composite job into two jobs and find the claimant capable of performing past relevant work based on the less demanding of the two jobs.'" *Boggs*, 2014 WL 1277882, at *10 (quoting *Boggs*, 2014 WL 1277882, at *10).

Here, the vocational testified that Plaintiff's past work included automobile sales, which had an SVP of 6 and required light exertion, both as performed and as defined by the DOT; finance manager, which had an SVP of 6 and required sedentary exertion, both as performed and as defined by the DOT; and a "combo" job, *i.e.*, composite job, of both finance manager and assistant general manager, with the latter position having an SVP of 6 and which was defined by the DOT as requiring light exertion but which required only sedentary exertion as Plaintiff performed it. R. 190. The vocational expert testified that a person with Plaintiff's vocational background and RFC could perform the finance manager job but not the positions of automobile

sales or assistant general manager. R. 190−91. Although Plaintiff argues that her testimony establishes that she performed the job of finance manager for only six months, the Court finds that the ALJ reasonably interpreted the following testimony as establishing that Plaintiff worked as a finance manager for several years, not six months:

Q When is the last time you worked?

A I believe it was May of 2013.

Q *Mm-hmm. Okay. According to your earnings record, you were working for a Toyota dealership at that time. Is that right?*

A *Correct.*

Q *And what was your position there?*

A *Finance manager.*

Q *How long had you held that position?*

A *At that dealership, I think I was there for maybe six months.*

Q In performing this work, how much of the time would you say you were standing and how much of the time were you sitting?

A Probably the majority was sitting because I did the finance, the paperwork. Let me just think real quick. I worked on the computer, putting in the clients' information for getting loan approvals, and then printing all the paperwork and going over all the ancillary products and everything with the customers, and reviewing their credit bureaus with them.

R. 169.

Q Okay. *Before that it looks like you worked at another dealership called Morrie Schwartz and Sons [phonetic]. Is that right?*

A *Correct.*

Q And how long were you there?

A *I don't really remember. A couple of years maybe.*

Q *It looks like maybe 2012 and '13. Does that sound right?*

A *Yeah.*

Q *Okay. And were you doing the same thing there?*

A *Yes. A little more there. At that dealership I did a little bit more because I was also the assistant GM. So when the GM wasn't there, I had to fill both positions.*

Q Okay. What duties did you have as an assistant GM that were different from those of a finance manager?

A I was actually structuring the deals at the front desk, whether it be a lease, a finance, a balloon note; whatever. Giving our customers different options on what payment would be best for them.

Q Okay. And in this job, would you again estimate it was about 70 percent sitting and 30 percent standing?

A I would say yes.

Q And how about the weight. Would you again say it was around 10 pounds –

A Yes.

Q -- maximum weight you had to lift?

A Yeah.

Q *Okay. Before that you worked at Ford –*

A *Sansone Ford* [phonetic].

Q Okay. *And what did you do there?*

A *The same. Finance. And I helped close deals.*

Q If we go back -- you stopped working in 2013. the last 15 years of your working life –

A Yes.

Q – that's going back in 1998.

A Yes.

Q Would it always have been the same work?

A From '97 to -- yes. It was in the car business.

Q All right.

A *Probably about '99 is when I became a finance manager.* But it's always been in the car business since '97.

Q Between '97 and '99, what did you do?

A Selling cars and helping close deals for other salespeople.

R. 170–72 (emphasis added). The ALJ's finding that Plaintiff had prior relevant work as a finance manager for more that two years was reasonably based on Plaintiff's own testimony.

Moreover, the ALJ's interpretation of Plaintiff's testimony that she worked as a finance manager for the Toyota dealership and Sansone Ford for several years in excess of the required one to two years required to learn this position—without counting the two years spent working in the composite finance manager / assistant general manager composite job at Morrie Schwartz and Sons—is also supported by other evidence in the record. Specifically, Plaintiff reported in her Work History Report that she worked as a finance manager for multiple years. R. 343–50 (reflecting that she worked as a "Finance Manager" from 2002 to 2010; as a "Director of Finance" from February 2011 to February 2013; and as a "Financial and Insurance Manager" from February 2013 to May 2013); *see also* SSR 82-62 ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."). Accordingly, this Court concludes that substantial evidence supports the ALJ's finding that Plaintiff was able to perform her past relevant work as a finance manager.

## D. Exclusion of Evidence

Plaintiff also argues that "the ALJ improperly excluded relevant medical evidence by improper application of 20 C.F.R. § 404.935." *Plaintiff's Brief*, ECF No. 9, pp. 20−22; *Plaintiff's Reply Brief*, ECF No. 13, pp. 4−5. Plaintiff contends that the agency was aware of certain medical records, yet excluded them from the record as a punitive application of 20 C.F.R. § 404.935. *Id.* Plaintiff's arguments are not well taken.

Under applicable regulations, a claimant must submit any information or evidence to the ALJ no fewer than five business days before the scheduled administrative hearing ("the five-day rule"):

> When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935(a). If a claimant misses this submission deadline, an ALJ will accept the information or evidence under certain limited circumstances:

> If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. . . .

20 C.F.R. § 404.935(b).

Here, the ALJ sent Plaintiff a letter dated June 22, 2018, advising that an administrative hearing was scheduled for September 26, 2018. R. 273–87. In that letter, the ALJ advised, *inter alia*, as follows:

> **If you are aware of or have more evidence, such as recent records, reports, or evaluations, you must inform me about it or give it to me no later than 5 business days before the date of your hearing. If you do not comply with this requirement, I may decline to consider the evidence unless the late submission falls within a limited exception.**

R. 275 (emphasis in the original), 282 (duplicate) (emphasis in the original). In a letter dated September 19, 2018, Plaintiff's former counsel, Attorney Jasmine C. Dickerson, who also represented Plaintiff at the administrative hearing on September 26, 2018, acknowledged that "[u]nder the court rules, all medical evidence must be submitted 5 business days before the hearing in order to be considered unless good cause is shown. Through this letter we submit our statement of good cause." R. 374–75. Attorney Dickerson advised that she had submitted a records request to Dr. James Fischoff, but that "we still have not received their records. These records illustrate additional information regarding the claimant's mental health conditions that is not as apparent in the records on file." R. 374. Attorney Dickerson went on to request that the record be left open for seven days in order to obtain the records. *Id.*

At the September 26, 2018, administrative hearing, Attorney Dickerson advised that she had electronically submitted the records from Dr. Fischoff on September 24, 2018, and therefore no longer needed the record to be held open. R. 164–65. The ALJ and Attorney Dickerson then engaged in the following exchange regarding the late submission of these records:

> ALJ: Let me see if I can find them here. Oh, yeah. Here they are [Dr. Fischoff's records]. I see. Okay. Why were they submitted so late?

> ATTY: We requested the records back in July. It's just the doctor's office -- we were waiting for him to not only fill out RFCs for our office regarding Ms. Delpizzo, including the fibromyalgia questionnaire, but also release the records to

our office. Due to the summertime, the doctor was not in his office throughout the summer, so it wasn't until the doctor gave his clearance -- the staff clearance to release that we finally received the records.

ALJ: Why did you request them in July [2018] when they go back to 2014?

ATTY: Because our office standard is once the hearing has actually been scheduled and we get confirmation of the actual date, then we usually request records to update the file, other than additional records that we may have been getting while the claimant's been in treatment. Also part of his records that were submitted were actually already submitted in Dr. Padell's [Podell's] records, because a portion of these records include Dr. Padell's [Podell's] records as well as some x-rays that we had already submitted as well. It's just Dr. Fischhoff's actual treatment notes and the RFCs were just recent, more recent for a request. Everything else we submitted prior to that.

ALJ: Well I –

ATTY: From Dr. Pradatriano [phonetic] –

ALJ: I will reserve ruling on whether that will be admitted.

ATTY: And we also did provide under the rules of the five-day rule you notice that these records were outstanding.

ALJ: Your five-day letter was not adequate.

ATTY: It was –

ALJ: It does not comply with the SSR 17-4, and that's why I'm hesitating here.

ATTY: Okay.

ALJ: But I will make the decision, and I will let you know in the decision what I decided to do about these records.

ATTY: Okay.

ALJ: Whether they'll be admitted or not.

ATTY: Either way. Some of the records that were submitted with Dr. Fischhoff's records were already submitted, and they're seen in Ms. Delpizzo's other records, including Dr. Padell's [Podell's] assessment of the claimant, as well as the objective evidence of x-rays indicating her condition. So these are already still in the record regardless, if you don't want to –

ALJ: So you're telling me that you submitted duplicate records.

ATTY: I'm saying that we cannot cherry pick records. Therefore, Dr. Fischhoff's completed record that his office sent us is the exact same thing that we sent you.

ALJ: I've already said what I'm going to do.

ATTY: Okay.

ALJ: There's nothing more to be said about this.

ATTY: Okay.

R. 165−67.

In the administrative decision, the ALJ found that Plaintiff did not meet the requirements of 20 C.F.R. § 404.935(b) and refused to admit this medical evidence, explaining as follows:

The claimant submitted or informed me about additional written evidence less than five business days before the scheduled hearing date. On September 24, 2018, two days before the hearing, the claimant's representative submitted into the electronic file one document containing 129 pages with evidence from James Fischoff, M.D., ranging from August 9, 2014 to September 15, 2018. I decline to admit this evidence because the requirements of 20 CFR 404.935(b) are not met.

Specifically, in a letter dated September 19, 2018, Jasmine Dickerson, the claimant's attorney who represented her at the hearing, advised that records from Dr. Fischoff had not been received, and she requested that the record be held open for 7 days for receipt of those records (Ex. 10E). Ms. Dickerson's letter also provided Dr. Fischoff's address and telephone number (*Id*.). Finally, the letter acknowledged that "all medical evidence must be submitted 5 business days before the hearing in order to be considered <u>unless good cause is shown</u>" and that the letter was her statement of good cause (emphasis added) [emphasis added by ALJ] (*Id*.).

At the outset, I note that, although the letter is dated September 19, 2018, it was not received into the electronic folder until September 21, 2018, less than five business days before the hearing [footnote omitted]. As such, the letter itself did not timely inform me of outstanding medical evidence. Even so, I also find that the September 19, 2018 letter does not comply with the requirements of SSR 17-4p and 20 CFR 404.935(b). Specifically, although the attorney acknowledged that she had to show "good cause" for her failure to obtain records on a timely basis, no cause was stated, much less good cause. Additionally, the letter did not provide any information about the outstanding medical evidence except its source - e.g., the letter did not identify the evidence's importance to the case, the relationship of Dr. Fischoff to

the claimant, the time period covered by the records, what such records were expected to show, or the specific kinds of illness(es) treated by Dr. Fischoff.

These deficiencies were pointed out to Ms. Dickerson at the hearing, and she was given the opportunity to explain the delay in obtaining the records. Ms. Dickerson offered three explanations:

> 1. she acknowledged that the records had not even been requested until July 2018 and that the delay was partly due to her office's having requested that Dr. Fischoff complete opinions;

> 2. she then stated that a reason for the delay was that the doctor was "out most of the summer"; and,

> 3. she offered the explanation that her office has a policy of not requesting records until the hearing is scheduled (Hearing Recording).

Each of these explanations is insufficient to establish good cause. There was no mention in the letter that opinions from Dr. Fischoff had recently been requested, and Ms. Dickerson acknowledged that much of the evidence was duplicative of what was already admitted into the record (Hearing Recording). That the doctor was "out most of the summer" is also no excuse. Records requests are normally handled by persons in the doctor's office other than the doctor, and there was no showing that that could not have been the case here. Finally, the representative's policy of not requesting records until the hearing does not excuse the claimant's representative from timely submitting evidence, especially when the representative has been of record since August 2015 (Exs. 1B; 2B).

For the foregoing reasons, I refuse to admit the untimely medical evidence and have not considered it in this decision.

R. 16–17. The Court finds no error with the ALJ's reasoning in this regard.

Plaintiff, however, apparently contends that the ALJ violated the spirit of 20 C.F.R. § 404.935(b) by punishing her and excluding this medical evidence where Plaintiff did not ask to postpone the hearing or the administrative decision and where the ALJ "excluded evidence adduced at the hearing. In excluding the documents the ALJ also excluded evidence from medical sources of whom the agency was well aware from prior submissions, including Community Medical Center, NJ Imaging, Shore Imaging, Dr. Podell, Ocean Health and Dr. Dickerson." *Plaintiff's Brief*, ECF No. 9, pp. 20–22 (citing 81 Fed. Reg. 90987 for the

proposition that, according to Plaintiff, the five-day rule was implemented to avoid postponement of hearings or decisions to secure new evidence and that 81 Fed. Reg. 90987 advises that the five-day rule should not be used as a punitive device against claimants or their representatives); *see also Plaintiff's Reply Brief*, ECF No. 13, pp. 4–5 (same).

Plaintiff's arguments are not well taken. As detailed above, an ALJ will accept evidence submitted after the deadline established by the five-day rule if the ALJ has not yet issued the decision and if the Social Security Administration's ("SSA's") actions misled the claimant; or the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented the claimant from informing the SSA about or submitting the evidence earlier; or some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from informing the SSA about or submitting the evidence earlier. 20 C.F.R. § 404.935(b). Here, the Court agrees with the ALJ's reasoning that none of the three explanations offered by Attorney Dickerson satisfied the regulation. R. 17; *see also Upton v. Comm'r of Soc. Sec.*, No. CV 20-430, 2021 WL 1662491, at *1 (W.D. Pa. Apr. 28, 2021) ("Where, as here, the ALJ excluded untimely evidence and provided every opportunity for Plaintiff to argue an exception excusing the lateness of her filing, the Court finds no abuse of discretion in excluding the late-filed materials."); *Acosta v. Saul*, No. 3:18-CV-02136, 2019 WL 7407396, at *3 (M.D. Pa. Nov. 12, 2019), *report and recommendation adopted*, No. 3:18-CV-2136, 2020 WL 42047 (M.D. Pa. Jan. 2, 2020) ("Because the ALJ thoroughly detailed his reasoning for rejecting counsel's reliance on an exception to the [five-day] rule [that there were unusual, unexpected or unavoidable circumstances beyond the claimant's control], there is no basis for reversal on this ground.").

In short, because the ALJ did not err in excluding the proffered medical evidence, such

exclusion does not require remand.

### E. Step Five

Finally, Plaintiff contends that the Commissioner failed to carry his burden at step five of the sequential evaluation process. *Plaintiff's Brief*, ECF No. 9, pp. 22–23. However, because the ALJ found, at step four, that Plaintiff could perform her prior relevant work as a finance manager and never reached step five of the sequential evaluation process, this argument is utterly without merit. *See* 20 C.F.R. § 404.1520(a)(4)(iv) (providing that a claimant will be found not disabled where the ALJ finds at step four that the claimant can perform past relevant work).

## V. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 28, 2021                                    *s/Norah McCann King*
                                                   NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE